**William GENTILE**

**v.**

**Robert H. FINCH, Secretary of Health, Education and Welfare,**

**United States of America, Appellant.**

**No. 18030.**

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1969.

Decided Feb. 3, 1970.

Leonard Schaitman, Dept. of Justice, Civ. Div., Washington, D. C. (William D. Ruckelshaus, Asst. Atty. Gen., Richard L. Thornburgh, U. S. Atty., Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Ralph J. Talarigo, Portage, Pa., for appellee.

Before HASTIE, Chief Judge, and VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

This appeal has been taken from a judgment of the district court reversing a decision in which the Secretary of Health, Education and Welfare had denied the appellant's application for disability benefits and the establishment of a period of disability under the Social Security Act. The crucial issue is whether the appellant's medically determinable impairment of health resulted in "inability to engage in any substantial gainful activity" within the terms of the recently amended definition of "disability" in Social Security Act §§ 216(i) and 223(d), 42 U.S.C. §§ 416(i) and 423(d) (Supp. IV, 1965–1968).

Under the amended statutory definition:

"(1) The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

* * * * * *

"(2) For purposes of paragraph (1) (A)—

"(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. * * * '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where [an] individual lives or in several regions of the country."

Social Security Act § 223(d), 42 U.S.C. § 423(d) (Supp. IV, 1965–1968).[1]

The district court correctly determined that substantial evidence supported the hearing examiner's finding that the claimant suffered from the medically determinable impairment of "anthracosilicosis with a moderately severe obstructive ventilatory defect [and] mild depression. * * * "[2] The evidence left no doubt that this condition rendered the claimant unable to do his previous work which had included mining, steel mill employment, road construction and miscellaneous arduous outdoor activities. But the district court expressly upheld the hearing examiner's finding that the claimant could perform seden-

---

1. Social Security Act § 216(i), 42 U.S.C. § 416(i) (Supp. IV, 1965–1968) makes the same definition applicable in determining periods of disability. The amended definition is effective with respect to applications that were the subject of pending civil actions under section 205(g) of the Social Security Act in the month when the amendments were enacted. Act of Jan. 2, 1968, Pub.L.No. 90–248, § 158 (e), 81 Stat. 869, 42 U.S.C. § 423(d) note. The present action was then pending.

2. The district court apparently disagreed with the hearing examiner's conclusion that "the evidence does not show that claimant's impairments have been * * * of the requisite duration, actual or expected, as to have constituted 'disability' * * * *," but the district court made no explicit finding that the claimant's condition had lasted or could be expected to last continuously for twelve months or more. See Social Security Act § 223(d) (1) (A), 42 U.S.C. § 423(d) (1) (A) (Supp. IV, 1965–1968).

tary, light, or moderate work, and left undisturbed an additional finding that jobs of this type existed in significant numbers in the region of the claimant's residence.

The Secretary had deemed these findings adequate to preclude the claimant from satisfying the statutory test for disability. However, the district court ruled that "the issue is whether in 1964 [the claimant] had a reasonable opportunity to secure * * * employment on a substantial basis." Gentile v. Gardner, W.D.Pa. 1969, 298 F.Supp. 1401, 1406. The district court found that the only evidence on the claimant's employment opportunities showed that he would not be hired for the sedentary, light, or moderate work that he could do. The evidence was the testimony of a vocational expert that a prospective employer would not hire a job candidate with the symptoms described in a report of the claimant's family physician. The district court concluded that there was no evidence that the claimant had a reasonable opportunity to engage in substantial gainful activity, and for that reason reversed the Secretary's decision that the claimant was not "disabled" within the meaning of the Act.

■■■ We find two errors in the district court's analysis. First, the vocational expert's testimony that the claimant would not be hired was based on the assumption that the claimant had the impairments specified in his family physician's report, namely, silicosis and moderately severe to severe depression. But the hearing examiner characterized the claimant's mental condition as "mild depression," and the district court found that the evidence of even mild depression seemed "inconsequential in the light of the report of the only psychiatrist who examined [the claimant]." 298 F. Supp. at 1405–1406. Second and more fundamental, by requiring proof of the claimant's opportunities to be hired for the jobs that he was capable of perform-

ing, the district court disregarded the statutory mandate that "an individual * * * shall be determined to be under a disability only if * * * he * * * cannot * * * engage in any * * * substantial gainful work which exists in the national economy, *regardless of whether * * * he would be hired if he applied for work.*" [3]

This is plain language and the legislative history of the amended definition of disability supports construction of the statute in accordance with its terms. In reviewing judicial interpretation of the prior disability definition, which did not include the above emphasized concluding clause, both the House and the Senate expressed concern over:

> "(1) An increasing tendency to put the burden of proof on the Government to identify jobs for which the individual might have a reasonable opportunity to be hired, rather than ascertaining whether jobs exist in the economy which he can do. Claims are sometimes allowed by the courts where the reason a claimant has not been able to get a job is that employers having jobs he can do, prefer to avoid what they view as a risk in hiring a person having an impairment even though the impairment is not such as to render the person incapable of doing the job available."

H.R.Rep.No.544, 90th Cong., 1st Sess. 29 (1967); S.Rep.No.744, 90th Cong., 1st Sess. 48 (1967). Both the House Ways and Means Committee and the Senate Finance Committee stated in unequivocal terms that the intent of the amended definition was to make it clear that unwillingness of employers to hire the handicapped should not be considered in determining disability.

> "While such factors as * * * whether [a claimant] would or would not actually be hired may be pertinent in relation to other forms of protection, they may not be used as a basis for finding an individual to be disa-

---

**3.** Social Security Act § 223(d) (2) (A), 42 U.S.C. § 423(d) (2) (A) (Supp. IV, 1965–1968) (emphasis added).

bled under this definition. It is, and has been, the intent of the statute to provide a definition of disability which can be applied \* \* \* without regard to \* \* \* local hiring practices or employer preferences \* \* \*."

H.Rep.No. 544, 90th Cong., 1st Sess. 30 (1967); S.Rep.No.744, 90th Cong., 1st Sess. 49 (1967). U.S.Code Cong. & Ad. News, 2882.

The decisions of the other courts of appeals that have considered the amended statutory definition of disability are in accord with our interpretation. See Martin v. Finch, 5th Cir. 1969, 415 F.2d 793, 794–795; Labee v. Cohen, 5th Cir. 1969, 408 F.2d 998, 1000 (per curiam); Wright v. Gardner, 7th Cir. 1968, 403 F.2d 646, 647 (per curiam); Mullins v. Gardner, 6th Cir. 1968, 396 F.2d 139, 140 (per curiam). In Wright v. Gardner, *supra*, the claimant had filed an application for disability insurance benefits under the Social Security Act based primarily upon the loss of the use of his left arm. The Secretary found that the claimant's functional loss of his arm did not preclude him from performing light work. In affirming the district court's judgment upholding the Secretary's determination, the court of appeals rejected the claimant's "principal contention \* \* \* that because of the hiring practices of employers within a reasonable distance from his residence,

he would not in fact be hired for any light work which he can perform," on the ground that the amendments to the definition of disability "make it clear \* \* \* that a claimant \* \* \* is not disabled within the meaning of the statute merely because he would not actually be hired for such work." 403 F. 2d at 647.

Throughout the administrative proceedings on the present claimant's application, the proper standard of disability was applied.[4] The hearing examiner decided that the claimant could perform substantial gainful work in jobs that existed in significant numbers in the economy, and recognized that it was irrelevant to determine whether or not the claimant would be hired. In adopting the hearing examiner's supplemental decision, the Appeals Council stated: "The controlling factor is not whether an employer would hire the claimant but rather whether the claimant is able to perform the enumerated jobs." Moreover, substantial evidence supported the administrative determination that work the claimant could do existed to a significant extent in the region where the claimant resides. On the basis of personal knowledge of the region, the vocational expert testified that there were many openings for packagers, machine tenders or feeders, and industrial tow motor or fork lift operators, and that these jobs involved the type of seden-

4. The present application was filed on December 20, 1965. After an evaluation of the evidence by a disability examiner, the Pennsylvania state agency found that the claimant was not disabled, and the claimant's application was denied initially and on rehearing. See Social Security Act § 221(a), 42 U.S.C. § 421(a) (1964); 20 C.F.R. §§ 404.902, 404.905–404.916 (1969). At the claimant's request, a hearing examiner considered the case *de novo* and found that the claimant was not disabled. See 20 C.F.R. §§ 404.917–404.940 (1969). The Appeals Council affirmed the hearing examiner's decision after consideration of the entire record. See 20 C.F.R. §§ 404.945–404.951 (1969).

The claimant brought this action in federal district court under § 205(g) of

the Social Security Act, 42 U.S.C. § 405 (g) (1964), to review the administrative decision. On the Secretary's motion, the district court remanded the case to enable the Secretary to obtain further evidence. A supplemental hearing was held at which the claimant testified and was represented by counsel. The hearing examiner determined that the claimant was not disabled, and the Appeals Council adopted the hearing examiner's supplemental decision. The district court granted the Secretary's request that the civil action be reopened, denied the Secretary's motion for summary judgment, and ruled that the claimant was entitled to disability benefits and the establishment of a period of disability. Gentile v. Gardner, W.D.Pa. 1969, 298 F.Supp. 1401.

tary, light, or moderate activities that the claimant could perform.[5]

Although it is very harsh to deny disability benefits to one whose impairments will cause employers to refuse to hire him for jobs he can still perform, we are bound by the explicit Congressional command and by the substantial evidence supporting the Secretary's determination.[6]

The judgment will be reversed.

5. In view of the expert's testimony about job openings, it is unnecessary to reach the question whether Social Security Act § 223(d) (5), 42 U.S.C. § 423(d) (5) (Supp. IV, 1965–1968) changes the burden of coming forward with vocational evidence. *Cf.* Flake v. Gardner, 9th Cir. 1968, 399 F.2d 532, 541.

6. Our disposition of this appeal makes it unnecessary to consider other issues that have arisen in connection with the fact that two prior applications based on the claimant's silicosis were denied after hearings by the Secretary, whose decisions became final when the claimant failed to seek judicial review. See Social Security Act § 205(h), 42 U.S.C. § 405(h) (1964). The hearing examiner refused to reopen the prior applications, and we intimate

no opinion on the reviewability of the refusal. *Compare* Cappadora v. Celebrezze, 2d Cir. 1966, 356 F.2d 1, *with* Filice v. Celebrezze, 9th Cir. 1963, 319 F.2d 443.

On the other hand the hearing examiner considered in support of the third application evidence of disability at times before the filing of the second application. But by strict application of the doctrine of *res judicata*, the district court found that the final decisions of the Secretary on the claimant's prior applications limited the period during which the claimant could establish that he was under a disability. Gentile v. Gardner, *supra*, 298 F.Supp. at 1404. Here again, we find it unnecessary to consider, and we express no opinion upon, the issue.